IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nancy Arnaoudoff,<br><br>                    Plaintiff,<br><br>v.<br><br>Tivity Health Incorporated, Tivity Health Services LLC,<br><br>                    Defendants. | No. CV 23-01510 PHX DJH<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE DIANE J. HUMETEWA:**

The motions at ECF No. 39, and the related motions at ECF Nos. 34, 40, 55, 58 and 59, were referred to the undersigned magistrate judge for preparation of a report and recommendation. (ECF No. 60).

Plaintiff, who proceeds pro se and *in forma pauperis*, filed a Complaint asserting claims of retaliation and wrongful termination pursuant to the Americans with Disabilities Act ("ADA"). (ECF No. 1 at 3-4). Plaintiff alleges her employment was wrongfully terminated on November 18, 2020. (ECF No. 1 at 5). Plaintiff resumed working, for a different employer, in November of 2021. (ECF No. 1 at 6). As to damages, in her Complaint Plaintiff seeks:

> 1 years' worth of my salary including all my benefits, and bonuses that I missed out on from November 2020 to November 2021, and relief with Punitive Damages for Pain and Suffering which would be a total of $50,000.00[.]

> Breakdown is as follows:
> My Yearly Salary which was $37,440.00
> My Yearly Benefits, Bonuses, Perks and Punitive Damages for Pain and Suffering $12,560.00.
> Grand Total of $50,000.00

(ECF No. 1 at 7).

Defendants answered the Complaint on January 4, 2024, and filed an amended answer on January 19, 2024. (ECF Nos. 9 & 14). The parties filed a report pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, and a scheduling conference was conducted March 26, 2024. (ECF Nos. 19 & 23). In an order entered March 27, 2024, the Court required discovery be completed by September 20, 2024, and dispositive motions be filed no later than October 25, 2025. (ECF No. 22). In the scheduling order the Court advised the parties: "The parties shall indicate when assistance from the Court is needed in seeking settlement of the case. Upon a joint request by the parties, the Court will refer the matter for a settlement conference before a Magistrate Judge." (ECF No. 22 at 6).

The parties have engaged in discovery. There is no indication in the docket that the parties have jointly requested referral of the matter to a Magistrate Judge for the purpose of conducting a settlement conference.

Defendants filed the subject Motion to Enforce Settlement Agreement on August 23, 2024. (ECF No. 39). Plaintiff responded to the motion in her pleadings at ECF No. 40 and ECF No. 41.

The pleadings indicate that on August 3, 2024, Defendants' counsel sent a draft settlement agreement to Plaintiff for review. (ECF No. 39-1 at 5; ECF No. 40-1 at 15). Later that day Plaintiff sent an email to Defendants' counsel, stating:

> I am sorry but I do not feel comfortable signing this agreement without an attorney on my side or a judge's review.
> I am uncomfortable with #5 [a confidentiality clause] and especially #6 [regarding liquidated damages if the confidentiality clause was violated]. So I will NOT be signing this agreement. I would like to ask for a MAGISTRATE JUDGE to help us resolve this settlement fairly or we can just continue the lawsuit to Summary Judgment with our current judge.

>However, I do want to inform you that the amount of settlement that I am willing to accept will increase every time I have to meet a deadline for court. So as of now the least I am willing to accept is $55K since I had to meet the deadline for Written Discovery last week. Our next deadline is our Depositions September 15th  If we get to that point, I won't settle for anything under $75K.
>… Please let me know how we can involve a judge in our settlement agreement for $55K or we can just continue the lawsuit.

(ECF No. 40-1 at 15).

On August 3, Defendants' counsel advised Plaintiff Defendants would not be amenable to deleting the confidentiality and liquidated damages provisions of the proposed agreement. (ECF No. 40-1 at 16).

On August 6, 2024, the parties discussed Plaintiff's demand that the settlement payment be increased to $57,671.80 to ensure that she netted $50,000 after taxes. (ECF No. 39-1 at 9-11; ECF No. 40-1 at 26-27).[1]

On August 8, 2024, Defendants' counsel updated Plaintiff regarding the status of her request for a settlement of $57,671.80. (ECF No. 40-1 at 29). In an email sent to counsel on the afternoon of August 8, 2024, Plaintiff stated: "… I am willing to settle this case and accept the $57,671.80 Settlement Agreement with Tivity, but I would need a Settlement Agreement to Sign with the Confidentiality Clause/Liquidated Damage Omitted before Friday 8/9/2024 5pm AZ time ["MST"]." (ECF No. 40-1 at 30).[2] Plaintiff's email to counsel was signed "Sincerely, Nancy Arnaoudoff." (*Id.*).

---

[1] Via an email set August 6, 2024, at 11:12 a.m., Plaintiff stated:
Mr. Crowell,
For a $50,000 employment discrimination settlement in Arizona, the approximate total tax liability for me would be $7,671.80 which would include State & Federal Taxes. If Tivity agrees to pay me $57,671.80 so that I could get the full $50,000 settlement as I wanted, and not be penalized by having to pay the Taxes on it, then I would agree to a settlement agreement out of court. Please review it with Tivity and let me know by this afternoon, otherwise if they do not agree to this amount we can move forward with the lawsuit.
(ECF No. 39-1 at 11).

[2] Lead defense counsel's office is in Tennessee.

1    At 7:59 a.m. MST on Friday, August 9, 2024, via email, Defendants unequivocally accepted Plaintiff's counter-offer to settle her claims for the sum of $57,671.80 and to delete the confidentiality and liquidated damages provisions from the settlement agreement. (ECF No. 39-1 at 15). Defendants' counsel's email states: "Tivity has agreed to your proposed revisions to the Settlement Agreement, so we have a deal. I have a meeting right now, but I'll forward you the revised agreement for signature as soon as this meeting concludes." (*Id.*).

Two hours later, at 10:16 a.m. MST on Friday, August 9, 2024, six hours prior to Plaintiff's stated deadline, Defendants provided Plaintiff with a Settlement Agreement containing the exact terms demanded by Plaintiff. (ECF No. 39-1 at 21; ECF No. 40-1 at 32-36). Defendants also provided Plaintiff with a comparison between the original and final versions of the Settlement Agreement, so that Plaintiff could clearly see the demanded changes were made. (ECF No. 40-1 at 33-34). Defendants' counsel stated in the August 9 email: "Please email me a signed copy. Alternatively, if you'd like to e-sign, I'm going to send you a copy via Adobe Sign as well. Either way is fine with me." (ECF No. 39-1 at 21; ECF No. 43 at 5-6). The Adobe Sign document was sent to Plaintiff at 10:20 a.m. MST. (ECF No. 39-1 at 31).

On the morning of August 12, 2024, Defendants' counsel followed up with Plaintiff by email regarding the Settlement Agreement, after she failed to sign and return it by Saturday, August 10, 2024. (ECF No. 39-1 at 33).

At 6:00 p.m. MST on August 13, 2024, Plaintiff sent an e-mail to Defendants' counsel attaching a "Demand Letter," demanding $237,000 to settle her claims. (ECF No. 39-1 at 43, 45-48). Plaintiff advised she had "uncovered a significant new development," i.e., a "former employee" who would "testify that Tivity Health has engaged in unlawful adverse actions against others, similar to what I experienced." (ECF No. 39-1 at 43). The Demand Letter stated a claim for back pay for four years, with interest; compensatory damages of $50,000; punitive damages of $20,000; and "Attorney's Fee and Legal Costs" in the amount of $5,000. (ECF No. 39-1 at 47).

At 7:49 p.m. MST on August 13, 2024, Defendants' counsel emailed Plaintiff, asserting that the parties had already reached a binding contract memorialized by the Settlement Agreement. (ECF No. 39-1 at 50). The email states:

> In [Plaintiff's] email to [Defendants' counsel] on August 8, you made very clear demands regarding the Settlement Agreement: (1) removal of the confidentiality and liquidated damages provisions and (2) receipt of a revised copy of the Settlement Agreement to sign by 5:00PM Arizona Time on August 9. We agreed to and complied with both demands.
>> At 8:00AM Arizona Time on August 9, I confirmed that Tivity agreed to your proposal. By that point, we had a binding contract.
>> At 10:16 AM Arizona Time on August 9, I provided you with a revised Settlement Agreement for signature and a comparison to the original draft. Minutes later, I also sent you a version of the Settlement Agreement that could be e-signed.
>
> The latest draft of the Settlement Agreement is a binding contract. You cannot withdraw from it now. Please send me a signed copy by 12:00PM Arizona Time tomorrow. If I do not receive a signed copy by that deadline, we will be forced to file a motion to enforce the Settlement Agreement with the Court.

(ECF No. 40-1 at 44).

An email from Plaintiff to Defendants' counsel dated the morning of August 14, 2024, states:

> At this point we can have the judge decide. As I mentioned to you before, after your interrogatories arrived Fed Ex which I received before your Settlement Agreement Approval from Tivity Health, I had enough time to uncover more evidence in my favor and make my decision about signing the agreement or not.
> I will mention that to the judge with my reply to your motion and that I want to continue with my case. I dont [sic] feel justice has been served. I'm new at all of this stuff and if I made a mistake I will own up to it with the judge.

(ECF No. 40-1 at 45).[3]

Defendants filed the pending motion to enforce the settlement agreement (ECF No. 39) on August 23, 2024. Defendants assert the settlement agreement reached between

---

[3] It is noted that neither party disputes any of the emails' authenticity.

- 5 -

the parties constitutes a binding agreement, arguing the parties reached a "contract," and that "[a] settlement agreement can become binding before it is signed." (ECF No. 39 at 4). Defendants also contend that the "'courts regularly enforce settlement agreements that were binding when made but later renounced by a party,'" *quoting Nesbitt v. City of Bullhead City*, No. 18-cv-08354, 2020 WL 6262396, at *3 (D. Ariz. Oct. 23, 2020). (*Id.*).

Defendants maintain:

> The Settlement Agreement reflected the parties' final terms, and it is binding upon Plaintiff even though she now refuses to sign it. Moreover, to the extent that the Settlement Agreement is "disputed" for purposes of Local Rule 83.7, the e-mails exchanged between the parties satisfy that rule's writing requirement. *See*, *e.g.*, *Nesbitt*, 2020 WL 6262396 at *4; *Zalkow v. Taymor Industries USA, Inc.*, 2015 WL 5043684 at *3-4 (D. Ariz. Aug. 27, 2015).

(ECF No. 39 at 5).

Plaintiff did not file a per se response to Defendants' motion at ECF No. 39, but did respond to the arguments raised therein in her "Motion to Assist Plaintiff with Negotiations, Vacate Stipulated Settlement Agreement Due to New Discovery, and or Assist Plaintiff to conduct Depositions at the Court House Due to Financial Hardship," signed August 20 and docketed August 26, 2024. (ECF No. 40). A "supplement" to the motion at ECF No. 40 was signed August 23, 2024, and docketed August 23, 2024. (ECF No. 41). In the pleading at ECF No. 40 Plaintiff asserts "the stipulated settlement agreement between Plaintiff and Defendants … was not properly signed or binding due to Plaintiff's pro se status, lack of legal knowledge, and discovery of new evidence that significantly impacts the fairness of the settlement and the outcome of the case." (ECF No. 40 at 1). Plaintiff alleges she experienced "discomfort and objections to the settlement agreement's terms, particularly regarding the confidentiality and liquidated damages provisions,"[4] and further avers she "expressed a clear unwillingness to sign the agreement without legal advice and requested the involvement of a magistrate judge to

---

[4] It is noted, again, that these provisions were omitted from the Settlement Agreement per Plaintiff's demand and as consideration for Plaintiff's agreement to settle.

- 6 -

mediate the settlement terms." (ECF No. 40 at 2) (emphasis added). Plaintiff further asserts she has discovered "new evidence," i.e., a witness "who can provide testimony regarding [Defendant's] discriminatory practices in clear violation of," *inter alia*, the ADA. (*Id.*). Plaintiff contends the agreement was not binding because she "communicated to the Defendant's counsel [] that she would not sign the agreement without proper legal representation or a judge's review," and alleges she was "pressured into finalizing the agreement under circumstances that did not allow for a fully informed decision." (ECF No. 40 at 3). She further asserts "the settlement terms, as communicated," were "unfair," and the "fairness of the settlement process" was "undermin[ed]." (*Id.*).

A federal district court has the inherent authority to enforce an agreement to settle litigation. *See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1136-38 (9th Cir. 2002); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *Brooks v. Tarsadia Hotels*, 2023 WL 4560834, at *1 (9th Cir. 2023). Whether to enforce a settlement agreement is a matter within the Court's discretion. *See Doi*, 276 F.3d at 1136; *Brooks*, 2023 WL 4560834, at *1; *Tucker v. Tucker*, 203 F.3d 832 (Table), 1999 WL 1044911, at *1 (9th Cir. Nov. 17, 1999).

State contract law governs whether the parties reached a binding settlement agreement of the subject claims. *E.g.*, *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014). *See also Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) (holding a motion to enforce a settlement agreement is "essentially" "an action to specifically enforce a contract."). General contract principles require an offer, an acceptance, consideration, and adequate specification of terms so that each party's obligations can be ascertained, to have an enforceable contract. *E.g.*, *Rogus v. Lords*, 166 Ariz. 600, 602 (Ariz. Ct. App. 1991). An agreement to resolve a case need not be written and signed to be enforceable. *See Estate of Studnek v. Ambassador of Glob. Missions UN Ltd.*, No. 04-cv-00595, 2007 WL 9724107 at *5 (D. Ariz. April 11, 2007), *cited in Nesbitt v. City of Bullhead City*, No. 18-cv-08354, 2020 WL 6262396, at *4 (D. Ariz.

Oct. 23, 2020). *See also Doi*, 276 F.3d at 1137-38,[5] *cited in Brooks*, 2023 WL 4569834, at *1 (holding the district court did not abuse its discretion in enforcing an oral settlement agreement between a pro se plaintiff and the defendant). The dispositive question is whether the parties understood and agreed upon all of the terms of the agreement. *E.g.*, *Estate of Studnek*, 2007 WL 9724107 at *5. The party seeking enforcement has the burden of demonstrating the parties formed a legally enforceable agreement to settle. *See Baker v. D.A.R.A. II, Inc.*, No. 06-cv-02887, 2008 WL 4368913, at *1 (D. Ariz. Sept. 24, 2008).

There is no question that there was an offer by Defendants to settle Plaintiff's claims for the sum of $57,671.80, and a counter-offer by Plaintiff to settle for this amount if the confidentiality and liquidated damages provisions were omitted and a written document was provided for her signature within twenty-four hours.[6] Defendants unequivocally accepted the counter-offer on the exact terms of the counter-offer. *See Nesbitt*, 2020 WL 6262396, at *4. The parties mutually agreed to specified terms; Plaintiff's counter-offer, which was accepted, involved the deletion of two specific paragraphs regarding confidentiality and liquidated damages and the provision of a settlement document for her signature within twenty-four hours. The Settlement Agreement clearly identified the consideration, i.e., in consideration for the sum of $57,671.80, essentially the amount sought in the Complaint, and upon the terms of the Settlement Agreement she dictated, i.e., that she would not be bound by a confidentiality agreement, Plaintiff would voluntarily dismiss this action with prejudice.

The fact that Plaintiff did not sign the Settlement Agreement memorializing the terms of the agreement reached by the parties does not mean the parties did not have an

---

[5] In *Doi*, the Ninth Circuit affirmed that the District Court's enforcement power extended to oral agreements, "particularly when the terms are memorialized into the record," even if "a party has a change of heart [after agreeing] to [the settlement] terms but before the terms are reduced to writing." 276 F.3d at 1137-38 (citations and internal quotation marks omitted).

[6] "[T]he addition of materially different terms to an agreement results in a counteroffer containing the additional terms instead of being treated as an acceptance." *Alcaide v. Thomas*, No. 11-cv-01162 2015 WL 6087560, at *1 (D. Ariz. Oct. 16, 2015), *citing United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 271 (Ariz. Ct. App. 1983).

enforceable, binding contract. Both parties "signed" the agreement between them by signing emails assenting to the agreed-upon terms. *See Nesbitt*, 2020 WL 6262396, at *4; *Zalkow v. Taymor Indus. USA, Inc.*, No. 14-cv-00243 JWS, 2015 WL 5043684, at *3-4 (D. Ariz. Aug. 27, 2015).[7]

Plaintiff argues that the agreement was not "binding due to Plaintiff's pro se status [and] lack of legal knowledge (ECF No. 40 at 1), and further avers she "expressed a clear unwillingness to sign the agreement without legal advice and requested the involvement of a magistrate judge to mediate the settlement terms." (ECF No. 40 at 2). Plaintiff's statements regarding an unwillingness to settle without legal advice or judicial intervention were made on August 3, 2024, after which the parties continued to negotiate a settlement. The statements in the pleading at ECF No. 40 are belied by her communication with Defendants' counsel on August 8, 2024, when Plaintiff stated she was "willing to settle" for a sum certain and upon the removal of the confidentiality and liquidated damages clauses. Additionally, at some point after obtaining her right-to-sue letter from the EEOC and before filing this lawsuit, Plaintiff chose to proceed pro se. (ECF No. 43 at 2). Plaintiff is entitled to proceed without counsel, but she is not entitled to any special consideration or assistance from the Court based on her pro se status. The Court, and magistrate judges, may not assist a pro se litigant or advise them as to the merits, or otherwise, of their claims. *See*, *e.g.*, *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986), *cited in Brady v. Navajo Cnty. Child Support Enf't*, No. 15-cv-08110, 2017 WL 11631018 at *7 (D. Ariz. Feb. 13, 2017) ("The United States Supreme Court has made it clear that it is not the role of a federal judge to act as counsel or paralegal to

---

[7] Local Rule 83.7 provides: "[n]o agreement between parties or attorneys is binding, if disputed, unless it is in writing signed by the attorney of record or by the unrepresented party ...." The Court has broad discretion in interpreting and applying the local rules. *See Miranda v. Southern Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983). The rule's signature requirement is intended to demonstrate an agreement's authenticity. *See Nesbitt*, 2020 WL 6262396, at *4. There is no dispute that the emails sent from Plaintiff's email address, which included her typed signature, were authentic. Accordingly, the email from Plaintiff stating she accepted the settlement terms provided an agreement was provided to her by a date and time certain constitutes a "signed" and valid acceptance of the settlement terms under Local Rule 83.7.

pro se litigants….") (internal quotations omitted); *Aifang Shi v. Central Ariz. Coll.*, 2008 WL 11395569 at *6 (D. Ariz. Dec. 3, 2008). Although magistrate judges conduct settlement conferences, the magistrate judges do not act as "mediators" and do not offer their opinions as to the merits of a party's case or defense nor do they generally advise a party as to whether they should accept or reject a proffered settlement.

Plaintiff alleges she experienced "discomfort and objections to the settlement agreement's terms, particularly regarding the confidentiality and liquidated damages provisions." (ECF No. 40 at 2). The confidentiality and liquidated damages provisions were removed from the final agreement and therefore Plaintiff's discomfort and objections to these terms does not provide a basis for finding there was no mutual agreement as to terms or that the agreement should not be enforced. Plaintiff further asserts she has discovered "new evidence," i.e., a witness "who can provide testimony regarding [Defendant's] discriminatory practices in clear violation of," *inter alia*, the ADA. (*Id.*). However, Plaintiff's email to Defendants' counsel indicates she received this information prior to her email presenting a clear counter-offer to Defendants. Plaintiff contends the agreement was not binding because she "communicated to the Defendant's counsel [] that she would not sign the agreement without proper legal representation or a judge's review," and alleges she was "pressured into finalizing the agreement under circumstances that did not allow for a fully informed decision." (ECF No. 40 at 3). These statements are undermined by the emails exchanged by Plaintiff and Defendants' counsel, and the fact that the parties had exchanged disclosure and discovery, and that Plaintiff was able to successfully negotiate an agreement without the confidentiality and liquidated damages clauses with an award of the damages sought in the Complaint.

Plaintiff also asserts "the settlement terms, as communicated," were "unfair," and the "fairness of the settlement process" was "undermin[ed]." (*Id.*). This is not a Fair Labor Standards Act case and, therefore, the Court need not find the terms of the agreement "fair" to enforce the settlement agreement. Nonetheless, the Magistrate Judge finds the terms of the agreement are fair. The proffered settlement terms provide the

relief demanded by Plaintiff in the Complaint. Moreover, even if Plaintiff prevailed on summary judgment or at trial, she would not be entitled to other than her actual (compensatory) damages of her lost wages and benefits for the time interval between her termination and finding new employment approximately one year later.[8] Absent a showing of malice, which is not evident from the face of the Complaint, punitive damages are not available to a prevailing plaintiff in an ADA suit for wrongful termination,[9] and neither compensatory nor punitive damages are available with regard to Plaintiff's retaliation claim. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002), *cited in Marie v. Arizona Dep't of Econ. Serv.*, No. 17-cv-03167, 2019 WL 13034821, at *3 (D. Ariz. June 5, 2019); *Alvarado v. Cajun Operating Co.*, No. 04-cv-00631, 2007 WL 9724722, at *2 (D. Ariz. Dec. 11, 2007). Additionally, with regard to Plaintiff's purported newly discovered evidence, the issue in this matter is Defendants' treatment of Plaintiff; the statements of another individual with regard to their own experience as Defendants' employee prior to Plaintiff's experience would not necessarily be relevant or admissible to determine whether Defendants violated Plaintiff's rights pursuant to the ADA.[10]

---

[8] Notably, in her Demand Letter Plaintiff sought both lost wages for four years, rather than the year she was out of work, and compensatory damages, without specifying any details of or basis for the requested compensatory damages.

[9] A prevailing plaintiff in an ADA suit may be awarded compensatory damages for hedonistic damages, such as emotional pain and mental anguish, *see* 42 U.S.C § 1981a(b)(3), but the plaintiff's testimony as to pain and anguish, standing alone, is not a sufficient basis on which to award such damages. *See Chalmers v. City of L.A.*, 762 F.2d 753, 761 (9th Cir. 1985).

[10] So-called "me-too" evidence is "neither per se admissible nor per se inadmissible" in discrimination cases. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 380 (2008). The question of whether "me-too" evidence is relevant "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.* at 388. In *Moore v. Donahoe*, 460 F. App'x 661, 663 (9th Cir. 2011), the Ninth Circuit found "[t]he district court did not abuse its discretion by excluding evidence of other ... employees' observations …," because "the majority of the evidence was not relevant to [the plaintiff's] claims" and the other employees were not "similarly situated" to the plaintiff. *Id.* In *Cruder v. Peoria Unified School District No. 11*, the court found "me too" evidence properly excluded because the plaintiff "offered nothing to suggest [the non-party's] circumstances were similar to his. He has offered nothing to show how this evidence might be relevant, other than that [the

Accordingly,

**IT IS RECOMMENDED that** the motion at ECF No. 39 be **granted** and the Court order the settlement agreement as negotiated between Plaintiff and Defendant, as evidenced by the Settlement Agreement sent to Plaintiff on August 9, 2024, be enforced.

**IT IS FURTHER RECOMMENDED that**, should the Court adopt this Report and Recommendation with regard to the motion at ECF No. 39, the motions at ECF Nos. 34, 40, 55, 58, and 59 should be **denied as moot**.

This Report and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal under Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the District Court's judgment. Plaintiff has fourteen days from the date of service of this Report and Recommendation to file specific, written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Failure to timely object to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely object to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 30th day of December, 2024.

_____
Camille D. Bibles
United States Magistrate Judge

---

non-party] too complained of race discrimination, which is simply not sufficient." *Id. See also Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1184 (C.D. Cal. Mar. 13, 2013) (finding evidence of retaliatory conduct against another employee was not relevant to the plaintiff's claim because it involved a different decision-maker).