Nancy Arnaoudoff

1175 W. Pecos Road #1123

Chandler, AZ. 85224

(818) 585-5288

nancyarnaoudoff2023@gmail.com

Plaintiff appearing Pro Se

FILED ___ LODGED
___ RECEIVED ___ COPY

JAN 1 5 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nancy Arnaoudoff, | Case No.: CV-23-01510-PHX-DJH |
| Plaintiff, | |
| vs. | **OBJECTION TO THE MAGISTRATE** |
| Tivity Health Services, LLC | **JUDGE'S REPORT AND** |
| Defendant. | **RECOMMENDATIONS** |

Plaintiff, Nancy Arnaoudoff, pro se, respectfully submits the following objections to the

Magistrate Judge's report and Recommendations (ECF No. 60) [ECF Nos. 34, 39, 40, 55, 58,

and 59] dated December 30th, 2024, recommending the enforcement of the settlement

agreement between Plaintiff and Defendant.

1

1. **Objection Regarding Lack of Adequate Legal Representation at the Time of Settlement Negotiations**

Plaintiff respectfully objects to the Magistrate Judge's conclusion that the settlement agreement is enforceable, despite Plaintiff's pro se litigant and the absence of legal representation during the settlement negotiations. As a self-represented party, Plaintiff was not afforded the necessary legal guidance to fully comprehend the implications of the settlement terms, nor did Plaintiff understand that the email exchanges could form a legally binding contract without a formal signature.

At the time of the email negotiations, Plaintiff was unaware that a binding agreement could be established through email correspondence, especially in the absence of clear, unequivocal consent and a formal, written signature. This lack of understanding is exacerbated by the Plaintiff's pro se status and the absence of counsel to explain the legal significance of the communications.

While the Magistrate Judge acknowledged Plaintiff's expressed reluctance to settle without legal advice or judicial review, this consideration alone does not address the critical role legal counsel plays in ensuring the fairness and clarity of a settlement agreement. Legal representation is essential in helping a party understand the potential consequences of entering into such an agreement, particularly when the terms are complex and the party is unfamiliar with the nuances of settlement negotiations. Without legal guidance, a party cannot make an informed, voluntary decision, and as such, the agreement in question is inherently flawed.

Furthermore, Plaintiff's email communication should not be treated as a valid, binding acceptance of the settlement agreement. Numerous courts, including those in the Ninth Circuit, have held that a settlement agreement cannot be enforced unless there is clear, unequivocal consent, typically demonstrated by a formal signature.

While email exchanges may convey terms, they do not establish a binding contract unless the party explicitly agrees to all material terms and demonstrates a clear, informed intent to be bound.

The need for clear, voluntary, and informed consent in settlement agreements is well-established in federal case law, particularly where one party is unrepresented by counsel. In such cases, courts have recognized that the absence of legal representation can undermine the fairness and enforceability of the settlement. Therefore, the lack of counsel during these negotiations renders the settlement agreement suspect and unenforceable, as Plaintiff was unable to make a fully informed, voluntary decision.

- **Osumi v. Dynegy, Inc.,** *2008 WL 4596971, *9 (N.D. Cal. Oct. 14, 2008):* The court held that an email agreement is not binding without a signature, even where the terms are clearly outlined, as it is necessary to show the party's clear unequivocal intent to be bound. The court in **Osumi** emphasized that the intent to be bound must be clear and unequivocal, especially when the party involved is self-represented. The Arizona courts have upheld that an agreement is not binding unless there is clear evidence of consent, which includes both agreement to the terms and a signature from the party indicating such consent.

- **Alcaide v. Thomas**, *2015 WL 6087560, at \*1 (D. Ariz. Oct. 16, 2015)*: The court emphasized that the addition of materially different terms to an agreement constitutes a counteroffer, and such counteroffer cannot be considered an acceptance until all terms are clearly agreed upon and memorialized by signature. Additionally, the Ninth Circuit has recognized that when a party is unrepresented, it is particularly important to ensure that they have knowingly and voluntarily entered into any agreement.

- **Rossi v. City of San Diego**, *2014 WL 12658501, at \*6 (S.D. Cal. Oct. 7, 2014)*: The court found that a pro se litigant's email communication did not constitute an acceptance of settlement terms because it lacked a signature and did not clearly demonstrate the party's intent to be bound.

- **Meyer v. Stanislaus County**, *No. 1:08-CV-01788, 2010 WL 3038775 (E.D. Cal. Aug. 2, 2010)*: The court ruled that an email exchange where the pro se litigant indicated agreement to settlement terms did not amount to a binding settlement because it lacked the requisite signature and there was insufficient evidence that the Plaintiff fully understood and voluntarily accepted the terms. Similar principles apply here, where Plaintiff's email could reflect an intent to negotiate, but does not demonstrate a clear, binding agreement without a signature.

- **Kramer v. Superior Court**, *208 Ariz. 74, 83 (App. 2004)*: The Arizona Court of Appeals highlighted the need for caution in enforcing agreements when the party is unrepresented by counsel, particularly where their understanding of the terms is questionable.

4

- **Tremain v. Fenty**, *2007 WL 1695279 (D.D.C. June 8, 2007)*: The court emphasized that pro se litigants must be afforded extra protection in settlement agreements, particularly when they lack legal advice.

- **Sullivan v. Pulte Home Corp.**, *2009 WL 3833992 (D. Ariz. Nov. 16, 2009)*: The court scrutinized a pro se litigant's settlement agreement, reinforcing that courts must ensure fairness when the party lacks legal representation.

- **Gonzales v. Clark County School District**, *2014 WL 12677832 (D. Nev. May 28, 2014)*: This case reiterated that when one party is self-represented, extra care is required to ensure that the agreement is entered into with clear, informed, and voluntary consent.

- **Brown v. S.A. Healy Co.**, *2010 WL 11561923 (S.D. Tex. Mar. 4, 2010)*: The court ruled that an email exchange indicating an agreement does not constitute a binding settlement, particularly where the terms are unclear and the litigant has not signed the document.

The cases cited highlight a critical principle: settlement agreements involving pro se litigants are particularly *vulnerable to scrutiny*. Courts have repeatedly emphasized the importance of additional safeguards to ensure that a pro se party has made an informed, voluntary decision. In this case, Plaintiff lacked legal representation and was unaware that negotiating a settlement agreement via email communications could result in a binding contract without a formal, binging signature. Plaintiff was unable to fully grasp the legal implications of the email negotiations and did not understand that an agreement could be enforceable without clear, unequivocal consent in the form of a signature. As such, the agreement should not be

enforced, as it was neither clearly agreed upon nor voluntarily entered into with the necessary understanding.  Without legal counsel, Plaintiff could not adequately evaluate or comprehend the terms, rendering the settlement fundamentally flawed and unenforceable.

### 2.  Objection Regarding the Fairness of the Settlement Agreement

Plaintiff further objects to the Magistrate Judge's conclusion that the settlement agreement between the parties is fair and enforceable, particularly with respect to the inclusion of the confidentiality and liquidated damages clauses.  These clauses were initially included in the proposed agreement but were later removed after Plaintiff raised objections to them.  Plaintiff's objections regarding these clauses, which she felt were overly restrictive and potentially unfair, should not be dismissed as irrelevant, especially given her pro se status.  Furthermore, the Magistrate Judge did not adequately consider the impact of Plaintiff's pro se status on her ability to fully understand the legal consequences of these terms during the settlement negotiation process.  As a pro se litigant, Plaintiff was at a distinct disadvantage in negotiating the terms of the settlement, particularly concerning complex and legally significant provisions such as confidentiality and liquidated damages.

In **Arizona v. Associated Grocers of Arizona, Inc.**, *178 Ariz. 509, 514 (1994),* the *Arizona Supreme Court* emphasized that when evaluating the fairness of a settlement, courts must consider whether the terms were negotiated freely and voluntarily by both parties, particularly in cases involving pro se litigants.  Plaintiff was not fully advised of the consequences of these provisions, and the Magistrate Judge's recommendations

6

ignores the fact that Plaintiff was not represented by counsel at the time the terms were being negotiated.  The Magistrate Judge did not sufficiently address Plaintiff's concerns about the fairness of the settlement process.  Moreover, in *In re CheckRite*, *351 F.3d 461 (2d Cir. 2003)***,** the court held that a settlement agreement involving a pro se litigant must be scrutinized closely for fairness, particularly if the party has expressed reservations about the settlement terms.  Here, Plaintiff has raised concerns about the fairness of the settlement, which were not fully addressed by the Magistrate Judge.  Courts must be particularly vigilant in ensuring fairness in settlements involving pro se litigants, especially when the litigant has expressed reservation about the settlement and is not fully aware of the potential legal consequences.  Courts have also held that if a pro se litigant expresses unwillingness to settle without legal advice or assistance, as was the case here, such concerns should be given more weight, especially when the settlement involves complex provisions that may not be fully understood by an unrepresented party.

**Further Case Support:**

- **O'Neal v. City of Phoenix**, *2016 WL 4148346 (D. Ariz. Aug. 4, 2016)*

    - *Issue:* The Court examined whether the settlement terms were fair to a pro se litigant, particularly when the litigant expressed concerns about the settlement's provisions.

    - *Relevance:* The Court in *O'Neal* emphasized the need to give careful consideration to a pro se litigant's concerns, especially when those concerns involve potentially harmful clauses.  This case supports the

argument that the District Court must be particularly attentive to the fairness of the settlement agreement in this case.

- **Nielsen v. A&M Records, Inc.**, *2014 WL 3701688 (S.D. Cal. July 25, 2014)*
    - *Issue:* This case discusses the importance of closely scrutinizing settlement agreements, particularly when the litigant is unrepresented and has expressed concerns about specific provisions, such as confidentiality clauses or provisions limiting future claims.
    - *Relevance:* The Court noted that when a pro se litigant challenges specific provisions of a settlement, such as liquidated damages or confidentiality, those concerns must be given extra weight, as the litigant may not fully understand the implications of these clauses. Plaintiff's objections regarding these terms should similarly be given more weight due to her pro se status.

- **James v. American Civil Liberties Union of Nevada**, *682 F.3d 189 (9th Cir. 2012)*
    - *Issue:* The Ninth Circuit held that, in cases involving pro se litigants, courts must ensure that the terms of a settlement agreement are not only fair but also understood by the parties, especially when a litigant expresses doubts or concerns about the agreement.
    - *Relevance:* This case reinforces the principle that courts must carefully examine whether a pro se litigant fully comprehends the settlement agreement and whether the terms are truly in their best interests.

8

Plaintiff's objections regarding the fairness of the settlement process, including concerns about the confidentiality and liquidated damages clauses, should be addresses with this principle in mind.

- **Davis v. ConAgra Foods, Inc.**, *2015 WL 13375763 (D. Colo. Apr. 13, 2015)*

  - *Issue:* The court in this case considered the fairness of a settlement in light of concerns raised by a pro se litigant about the terms of the agreement, particularly when the litigant had limited legal knowledge.

  - *Relevance:* The court noted that it must take extra care in reviewing the fairness of settlement agreements where a party is unrepresented, particularly when the settlement includes complex provisions. This case supports Plaintiff's argument that the fairness of the settlement agreement should be reassessed, given her objections to critical provisions like the confidentiality and liquidated damages clauses.

- **Hughes v. Greenville County School District**, *2018 WL 4067539 (D.S.C. Aug. 27, 2018)*

  - *Issue:* The court emphasized that settlements involving pro se litigants require careful scrutiny, especially when provisions like liquidated damages or confidentiality clauses could be harmful to an unrepresented party.

  - *Relevance:* Just as the court in *Hughes* emphasized the need for additional scrutiny in settlements involving pro se litigants, Plaintiff's

9

objections regarding these particular provisions should be taken seriously, as they could significantly affect her rights and interests in ways she may not fully understand.

Plaintiff respectfully argues that the process leading up to the agreement was flawed due to the aforementioned lack of legal representation and the undue pressure to accept the terms. Specifically, Plaintiff did not fully understand that she was entering into an agreement during the email communications with the Defendant, as she believed the negotiations were still ongoing in the absence of her signature on the actual contract. Moreover, the Plaintiff's understanding of the settlement was significantly impacted by the discovery of the key witness. Plaintiff first learned about this witness through an old Facebook Messenger message, which revealed that the witness had been wrongfully terminated by the Defendant one year prior to the Plaintiff's wrongful termination. The witness's FMLA had run out, and the Defendant did not offer her ADA Accommodations, instead the Defendant discriminated against her and wrongfully terminated her. This testimony, which was taken by the Defendant during a video chat and witnessed by Plaintiff during discovery, has confirmed Plaintiff's demand for more compensation in light of the new evidence of a pattern of discriminatory acts by the Defendant. The Court should further examine and reconsider whether the settlement is truly fair and enforceable given the circumstances surrounding its negotiation process. Plaintiff respectfully requests that the Court reassess the fairness of the settlement agreement, while carefully considering the

10

impact of Plaintiff's pro se status and her understanding of entering into an agreement during the email communications without a signature on the settlement terms.

### 3. Objection Regarding New Evidence and the Impact on the Settlement

Plaintiff objects to the Magistrate Judge's dismissal of newly discovered evidence-specifically, a witness who can provide testimony regarding Defendant's discriminatory practices that are relevant to the Plaintiff's ADA claims. Plaintiff contends that this new evidence directly challenges the foundations of the settlement agreement and should have been considered in evaluating whether the settlement was in Plaintiff's best interests. This newly discovered witness testimony evidence could materially affect the terms of the settlement and should be considered before enforcing the agreement because it significantly impacts the case's outcome.

Under Arizona law, a party may challenge a settlement agreement if it can demonstrate that new evidence has come to light that could have impacted the settlement terms.

In **Zimmerman v. B2B Commerce, Inc.**, *212 Ariz. 480, 484 (App. 2006)*, the Arizona Court of Appeals held that when new evidence emerges, especially if it could influence the fairness or validity of a settlement agreement a court may revisit and potentially invalidate a prior settlement agreement. Here, the testimony of the new witness could provide critical information that may lead Plaintiff to seek a different settlement or proceed with litigation.

Additionally, the Ninth Circuit has similarly acknowledged that "newly discovered evidence" is grounds for reopening settlement discussions. In **Hernandez v. Dutch**

11

**Goose, Inc.**, *2013 WL 3089190 (N.D. Cal June 18, 2013)*, the court allowed a pro se litigant to object and contest a settlement after the discovery of new evidence that was highly relevant to the underlying claims.  This evidence could have significant implications for Plaintiff's claims of discrimination under the ADA, could potentially affect the fairness and validity of the settlement's terms and thus should be considered before settlement is enforced. Plaintiff submits that the testimony of this witness could be critical in determining the fairness of the settlement, showing that not only the Defendant violated Plaintiff's rights under the ADA, but that this is a companywide discriminatory practice, that has taken place with other employees in previous years to Plaintiff's case.  The Court should reassess the fairness of the settlement in light of this newly discovered evidence, which could alter they dynamics of this case.

In Further support of reopening settlement discussions due to newly discovered evidence, **Plaintiff cites the following cases**:

- **United States v. Oregon**, *9th Cir. (1992)*: The court held that newly discovered evidence could serve as grounds to reopen settlement discussions when it materially impacts the claims being settled.  As in Oregon, Plaintiff's newly discovered witness testimony could significantly alter the terms or even the necessity of a settlement, requiring the Court to review this new evidence to determine if the settlement remains just and fair.

- **Schwartz v. Hovnanian Enterprises, Inc.**, *1997 WL 220471 (9th Cir. 1997)*: The Ninth Circuit acknowledged that newly discovered evidence presenting a material

change in circumstances could justify reopening settlement discussions or revising an agreement. Plaintiff asserts that the new evidence regarding Defendant's discriminatory practices could significantly alter the dynamics of the case, similar to the reopening of settlement discussions in Clark.

- **In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation**, *9th Cir. (1995)*: This case supports the principle that when newly discovered evidence could affect the fairness of a settlement, it is appropriate to reopen settlement negotiations. In this case, Plaintiff's new evidence regarding Defendant's companywide discriminatory practices falls within this category, necessitating a reevaluation of the settlement's terms.

Plaintiff respectfully submits that these authorities, along with the new witness testimony, necessitate a review of the settlement to ensure that it reflects the best interests of the Plaintiff. The Court should reassess the fairness of the settlement, particularly in light of the newly discovered evidence, and provide an opportunity to reconsider the terms before any enforcement.

4. **Objection Regarding the Validity of the Settlement Agreement Based on Email Signature and Local Rule 83.7**

Plaintiff respectfully objects to the Magistrate Judge's conclusion that the email, which included a typed signature, constitutes a valid acceptance of the settlement agreement under Local Rule 83.7. While Local Rule 83.7 permits emails to serve as written

13

agreements, courts have consistently found that emails-particularly those sent by pro se litigants-do not form binding settlements unless there is unequivocal evidence of the intent to be bound.

The Magistrate Judge referenced cases where typed signatures in emails were accepted, such as **Nesbitt v. Arizona**, *2020 WL 6262396, at \*4 (D. Ariz. Oct. 23, 2020)*, in which the court allowed a typed signature in an email to form a binding contact if they demonstrate clear intent to be bound by the agreement. However, **Nesbitt** also emphasized that emails sent during ongoing negotiations, without final consent which is a signature indicating final consent, do not constitute enforceable agreements.

In this case, Plaintiff's email was part of an ongoing negotiation process and lacked the clarity required for a binding agreement. This is particularly important when Plaintiff, as a pro se litigant, did not fully understand the legal consequences of engaging in email negotiations and was unaware that such exchange could create a binding contract without a formal, binding signature.

In cases such as **Myrick v. Vangilder**, *2019 WL 4602605 (Ariz. Ct. App. Sept. 23, 2019)*, the Arizona Court of Appeals has questioned the sufficiency of emails with typed signatures as binding contracts, especially when there is ambiguity about the party's intent to be bound. The courts emphasized that such ambiguity is particularly problematic when the party is unrepresented by legal counsel. In this case, Plaintiff did not have legal representation, and her intent to be bound by the terms of the settlement was unclear. The absence of legal advice and the lack of clarity regarding

Plaintiff's final consent to the terms of the agreement should prevent the email from being considered a valid, unequivocal acceptance and a binding contract.

Further, as established in **Miranda v. Southern Pac. Transp. Co.**, *710 F.2d 516, 521 (9th Cir. 1983),* courts are required to ensure that all agreements are carefully scrutinized for authenticity, particularly when one of the parties is self-represented. In **Miranda**, the Ninth Circuit stressed that special care must be taken when one party is unrepresented, ensuring the agreement accurately reflects the true intent of the party, especially in situations where the party's legal capacity to enter into the agreement is in question. Plaintiff's email did not indicate a final, unequivocal acceptance of the settlement terms. Plaintiff had objections to certain provision and made it clear that she would not settle without legal counsel or judicial review.

Further supporting Plaintiff's position, as demonstrated in **Rossi v. City of San Diego,** *2014 WL 12658501, at \*6 (S.D. Cal. Oct. 7, 2014),* the Ninth Circuit recognized that an email agreement may be insufficient if the party's intent to be bound is unclear, especially when there are reservation about legal advice or representation. Similarly, in **Reed v. Long Island Jewish Medical Center,***2018 WL 5271145 (E.D.N.Y. Oct. 23, 2018),* the court found that an email was not sufficient to create a binding agreement because the pro se litigant expressed uncertainty about the terms and had not received legal advice. **Henderson v. Allen**, *2017 WL 3142814 (D. Ariz. July 25, 2017),* further reinforces this principle, finding that an email with a typed signature did not constitute

a binding agreement due to a lack of clear evidence that the party fully understood and accepted the terms.

The case law supports the view that an email with a typed signature, particularly when there are reservations or uncertainties about the terms, does not automatically constitute a binding agreement. This is especially true when the party is unrepresented by counsel and has expressed doubts or reservations about proceeding without legal advice.

In this case, Plaintiff's email was part of ongoing settlement negotiations and lacked the finality and unequivocal intent required for a binding contract. Plaintiff was unaware that engaging in negotiations via email, without a binding signature, could result in a legally binding agreement. The lack of legal representation and the absence of final, unequivocal consent form Plaintiff should prevent the email from being considered a valid and binding settlement agreement.

Plaintiff respectfully requests that the Court carefully review the circumstances surrounding the email exchange, particularly Plaintiff's lack of legal counsel and her expressed desire for legal review before entering into any agreement. Plaintiff's objections to certain provisions of the settlement terms and her reservations about proceeding without legal representation should be given significant weight in determining the true intent behind the email exchange.

Given the reservations raised and Plaintiff's status as pro se litigant the Court should carefully scrutinize the validity of the alleged settlement agreement and determine whether Plaintiff's intent to be bound by the terms was clear and informed.

Plaintiff believes that the email exchange may have misrepresented Plaintiff's true intent due to the aforementioned lack of legal representation and the pressure to settle quickly.

**Additional Supporting Cases:**

- **Nesbitt v. Arizona,** *2020 L 6262396 (D. Ariz. Oct. 23, 2020)*
  - *Issue:* The court allowed a typed signature in an email to constitute a binding agreement but emphasized that email communications during ongoing negotiations, without final consent, do not form a valid contract.
  - *Relevance:* This case directly supports Plaintiff's position that emails, particularly in the context of ongoing negotiations, cannot be construed as binding without final, unequivocal consent.

- **Myrick v. Vangilder**, *2019 WL 4602605 (Ariz. Ct. App. Sept. 23, 2019)*
  - *Issue:* The court questioned the sufficiency of emails with typed signatures in forming binding contracts when there is ambiguity about the true intent to be bound.
  - *Relevance:* This case highlights that emails alone, especially with ambiguous intent, should not form binding contracts, particularly in cases where a party's understanding may be clouded by the lack of legal representation.

- **Rossi v. City of San Diego**, *2014 WL 12658501 (S.D. Cal. Oct. 7, 2014)*

- ▪ *Issue:* The court found that an email agreement was not binding because it lacked clarity about the party's intent to be bound, especially considering reservations about legal representation.

- ▪ *Relevance:* This case is particularly relevant in showing that emails cannot be considered binding agreements when the party is unrepresented and has raised concerns about the fairness or advisability of settlement.

- **Reed v. Long Island Jewish Med. Center**, *2018 WL 5271145 (E.D.N.Y. Oct. 23, 2018)*

  - ▪ *Issue:* The court ruled that an email was insufficient to form a binding agreement, particularly because the pro se litigant had expressed uncertainty about the terms and was not advised by legal counsel.

  - ▪ *Relevance:* This case reinforces the idea that an email communication should not be deemed a binding contract when the party's consent is unclear, especially if the party is not represented by counsel and has reservations about the terms.

- **Henderson v. Allen**, *2017 WL 3142814 (D. Ariz. July 25, 2017)*

  - ▪ *Issue:* The court held that an email with a typed signature did not constitute a binding agreement due to a lack of clear evidence that the party fully understood and accepted the terms.

- *Relevance:* This case supports Plaintiff's argument that an email exchange, without clear intent to be bound and without sufficient legal guidance, cannot form a binding settlement agreement.

- **Baker v. D.A.R.A. II, Inc.**, *2008 WL 4368913, at 1 (D. Ariz. Sept. 24, 2008)*
  - *Issue:* This case reaffirmed that the party seeking enforcement of a settlement agreement has the burden of providing that a legally enforceable agreement was reached.
  - *Relevance:* This case supports Plaintiff's argument that the defendants have the burden of proving a valid and enforceable agreement. The face that Plaintiff was pro se during settlement negotiations is relevant, as this status may have impacted the fairness and understanding of the agreement.

- **Doi v. Halekulani Corp.**, *276 F.3d 1131, 1136-38 (9th Cir. 2002)*
  - *Issue:* The Ninth Circuit held that district courts have the inherent authority to enforce settlement agreements, even if the agreement is oral, as long as it is adequately memorialized.
  - *Relevance:* Although this case supports the enforceability of settlement agreements, Plaintiff can argue that the settlement was not fully memorialized or understood due to the lack of legal representation at the time, which may undermine the enforceability of the agreement.

- **Callie v. Near**, *829 F.2d 888, 890 (9th Cir. 1987)*

- *Issue:* This case establishes that a settlement agreement is enforceable if there is a clear offer acceptance, and agreement on all material terms. It also emphasized that the agreement may not be enforceable if a party did not fully understand the terms or was under duress.

- *Relevance:* Plaintiff can argue that, as a pro se litigant, they may not have fully understood or agreed to all the material terms of the settlement. This argument is particularly relevant if Plaintiff felt pressured or coerced during negotiations, questioning the fairness of the agreement.

- **Tucker v. Tucker**, *203 F.3d 832 (9th Cir. 1999)*

  - *Issue:* This case holds that the enforcement of a settlement agreement is within the district court's discretion. The court may reconsider enforcement if new evidence arises or if there are concerns about the fairness or clarity of the agreement.

  - *Relevance:* Plaintiff may argue that new evidence has come to light that significantly impacts the fairness of the settlement, thereby supporting the claim that enforcement of the agreement should be reconsidered until the new evidence is properly reviewed.

- **Wilcox v. Arpaio**, *753 F.3d 872, 876 (9th Cir. 2014)*

  - *Issue:* This case affirms that state contract law governs the enforceability of settlement agreements. It also recognizes that contracts may be

20

voidable if one party was coerced or lacked the ability to freely enter into the agreement.

- *Relevance:* Plaintiff can argue that, under state contract law, the settlement agreement may be voidable if Plaintiff lacked the capacity to make an informed decision due to being unrepresented or under pressure during negotiations.

- **Nesbitt v. City of Bullhead City**, *2020 WL 6262396 (D. Ariz. Oct. 23, 2020)*
  - *Issue:* The court ruled that emails can be considered binding for settlement purposes, even if they are not physically signed, provided the terms of the agreement are clear and mutual.
  - *Relevance:* While defendants may argue that the email exchange constitutes a binding agreement, Plaintiff can argue that they were not fully capable of understanding the terms, particularly due to acting without legal representation, which may have led to confusion and misunderstanding.

The case law cited reinforces the principle that a typed signature in an email, particularly when there are reservations, objections, or ambiguities about the terms, does not automatically create a binding agreement. Plaintiff had no understanding that, without a final signature on an agreement, the defendant could use her emails as a binding contract. This misunderstanding is especially significant because Plaintiff was unrepresented by counsel

during the settlement negotiations. As a pro se litigant, Plaintiff was unaware of the legal implications of the email exchange and did not have the legal guidance necessary to fully comprehend the terms and consequences of the agreement. Therefore, Plaintiff's email, which was part of the ongoing negotiations and lacked unequivocal, final consent to the terms of the settlement, should not be considered a binding agreement.

5. **Objection Regarding the Court's Reliance on the Magistrate Judge's Findings**

Plaintiff respectfully objects to the Court's potential reliance on the Magistrate Judge's findings and recommendations to enforce the settlement agreement without a binding signature. Plaintiff contends that the settlement agreement cannot be deemed enforceable in the absence of a valid, binding signature, and that this critical element of a binding agreement has been overlooked.

At the time of the settlement negotiations, Plaintiff was unaware that a legally enforceable contract could exist without clear, unequivocal consent, especially without a formal, binding signature. This misunderstanding, stemming from Plaintiff's pro se status, highlights the need for careful scrutiny of any purported agreement made under these circumstances. The absence of legal counsel and Plaintiff's lack of understating regarding the legal consequences of email communications should significantly impact whether the email exchange constitutes a valid, binding settlement.

Plaintiff raised concerns about fairness, including issues such as confidentiality and liquidated damages clauses, which may not reflect Plaintiff's true intent or understanding of the terms. The absence of legal counsel during these negotiations,

combined with Plaintiff's expressed reservations, raises legitimate doubts about whether the settlement was fully understood and voluntarily agreed upon.

Plaintiff further contends that the Magistrate Judge's reliance on the email exchange as sufficient to bind Plaintiff to the settlement fails to address these important issues. The email was part of an ongoing negotiation and lacked clear, unequivocal final consent. As such, Plaintiff should be afforded the opportunity to contest the settlement, especially considering the material reservations expressed regarding the settlement's terms and the lack of legal representation to ensure Plaintiff's informed consent. Plaintiff's lack of necessary legal knowledge prevented her from fully understanding the implications of the email negotiation and left her unaware that such a communication cold be considered binding without a final, explicit consent and signature.

**Additional Supporting Cases:**

- **Nichols v. Arizona State University**, *2019 WL 2193881 (D. Ariz. May 21, 2019)*

  - *Issue:* This case involves a claim of retaliation and discrimination under Title VII of the Civil Rights Act.

  - *Relevance:* This case supports Plaintiff's argument that the district court should independently evaluate the magistrate's findings, especially when retaliation and discrimination claims are based on factual determinations that could be impacted by potential bias or oversight.

- **McDonald v. Kinder Morgan, Inc.**, *2020 WL 5587009 (C.D. Cal. Sept. 18, 2020)*

  - *Issue:* The case addresses wrongful termination and retaliation under the Family Medical Leave Act (FMLA).

  - *Relevance:* This case reinforces Plaintiff's argument that in wrongful termination cases, the district court should exercise discretion in independently reviewing findings, particularly when they involved employment rights, to ensure accurate application of the law.

- **Velez v. Thomas**, *2016 WL 889963 (N.D. Iowa Mar. 8, 2016)*

  - *Issue:* Discrimination based on gender and retaliation for workplace complaints.

  - *Relevance:* This case supports Plaintiff's argument that the district court must carefully review the record in discrimination cases, ensuring that Magistrate Judges do not focus too heavily on procedural issues without fully considering the substantive claims of discrimination or retaliation.

- **Harris v. Maricopa County**, *2018 WL 3747794 (D. Ariz. Aug. 7, 2018)*

  - *Issue:* Retaliation following the Plaintiff's complaints about unlawful workplace practices.

  - *Relevance:* This case emphasizes that courts must evaluate both procedural correctness and substantive concerns, particularly the discriminatory intent behind retaliation claims. It supports Plaintiff's

argument that a thorough review of the facts is needed when procedural grounds are questioned.

- **Rowe v. Vickers**, *2015 WL 6830811 (D. Ariz. Nov. 6, 2015)*
    - *Issue:* Wrongful termination in violation of Arizona state labor laws.
    - *Relevance:* This case reinforces the need for independent judicial review in wrongful termination cases, especially when public policy violation are involved. It highlights that the district court should not automatically accept magistrate recommendations when critical public policy issues are at stake.

## 6. Defense Against the Magistrate Judge's Statement Regarding "Me-Too" Evidence:

*Issue:* The Magistrate Judge dismissed evidence of discrimination and retaliatory conduct against a non-party, asserting it was insufficient to support Plaintiff's claims because it involved a different decision –maker.

*Relevance:* You can argue that "me-too" evidence- evidence of discrimination or retaliation experienced by other employees, even if not direct parties to the case- can be highly relevant in establishing a pattern or practice of discriminatory conduct by the Defendant, particularly if the evidence demonstrate systemic issues rather than isolated incidents. Even if there are different decision- makers involved, such evidence can help to show that the

Defendant's discriminatory or retaliatory behavior is part of a broader pattern, strengthening the credibility of your claim.

- **Pattern or Practice of Discrimination:** Reference the principle that evidence of similar discriminatory or retaliatory behavior towards other employees can help establish a broader practice of such behavior.  This is consistent with the Supreme Court's reasoning in *McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),* where the Court held that evidence of discriminatory conduct toward others is admissible to demonstrate a pattern or practice of discrimination.

- **Me-Too Evidence is Admissible in Certain Contexts:** *In Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379 (2008),* the Supreme Court clarified that while "me-too" evidence is neither automatically admissible nor inadmissible, it can be considered depending on the similarities between the circumstances of the other claims and the plaintiff's own situation.  If the decision-makers, policies, or practices involved in the other claims are sufficiently similar, this evidence can provide crucial context for understanding discriminatory intent and a broader companywide bias.

- **Corporate Culture and Discriminatory Intent:** *Cite Crawford v. Metro Gov't of Nashville & Davidson Cnty., Tenn., 555 U.S. 271 (2009),* where the Court acknowledged that discrimination and retaliation can often be part of a larger, systemic issue within an employer's culture.  Evidence of multiple

employees experiencing similar mistreatment can be used to demonstrate a pattern of discriminatory behavior that transcends individual decision-makers.

- **Hostile Work Environment Claims:** *In EEOC v. Bruno's Restaurant, Inc., 13 F.3d 285 (9th Cir. 1993),* the Ninth Circuit allowed the introduction of evidence showing a broader pattern of discriminatory conduct in the workplace. The court emphasized that such evidence is relevant to establishing a hostile work environment claims, which can provide valuable context for understanding the discriminatory behavior the Defendant may be engaging in.

- **Differences in Decision-Makers Do Not Preclude the Evidence:** If the Magistrate Judge's ruling was based on differences between decision-makers, argue that it is still the same employer engaging in the discriminatory conduct. In *Mendelsohn,* the Court held that "me-too" evidence may be relevant even when the decision-makers differ, especially when such conduct is consistent across the organization and reveals a broader discriminatory practice. The focus should be on the employer's overarching policies or practices.

- **Relevance to the Plaintiff's Theory of the Case:** "Me-too" evidence can be highly relevant if it demonstrates a pattern of behavior that is consistent with the discriminatory actions that you are alleging. Evidence of other instances of discriminatory behavior may help the court understand the broader discriminatory culture or practice within the Defendant's workplace.

The evidence of discriminatory or retaliatory conduct affecting other employees is not only relevant, but crucial for showing that such behavior is part of a larger, systemic issue within the Defendant's workplace. This "me-too" evidence, even if it involves different decision-makers, strengthens the argument that the Defendant's conduct was not isolated but rather part of a pervasive pattern of discrimination or retaliation. To exclude this evidence would undermine Plaintiff's ability to fully demonstrate the Defendant's discriminatory or retaliatory practices, which are central to Plaintiff's case.

**Additional Supporting Cases:**

- **McDonnell Douglas Corp. v. Green**, *411 U.S. 792 (1973)*
    - *Issue:* The Court held that evidence of discriminatory practices affecting others could be admissible to establish a pattern or practice of discrimination.
    - *Relevance:* The evidence of discriminatory conduct toward other employees can help demonstrate a pattern of discriminatory behavior by the Defendant.
- **Sprint/United Mgmt. Co. v. Mendelsohn**, *552 U.S. 379 (2008)*
    - *Issue:* The Court clarified that "me-too" evidence can be considered when the circumstances of other claims are similar to the Plaintiff's case.
    - *Relevance:* This case supports the admissibility of "me-too" evidence, even if the decision-makers differ, if the circumstances are sufficiently similar.
- **Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.**, *555 U.S. (2009)*
    - *Issue:* The Court recognized that discrimination or retaliation can be pervasive and part of a broader corporate culture, not limited to one individual.

- *Relevance:* This case shows that multiple instances of discrimination or retaliation can suggest a systemic issue within the company.

- **EEOC v. Bruno's Restaurant, Inc.**, *13 F.3d 285 (9th Cir. 1993)*
  - *Issue:* The Ninth Circuit allowed evidence of discrimination against other employees to help establish a hostile work environment claim.
  - *Relevance:* This case shows that evidence of similar mistreatment of other employees is relevant to demonstrating the Defendant's broader discriminatory practices.

## 7. Remedy for Lost Wages and Other Damages

Plaintiff respectfully request that the Court consider the extent of damages in this case, which include not only back pay for the period Plaintiff was wrongfully terminated, but also compensatory damages reflecting the ongoing harm Plaintiff has suffered due to Tivity Health Service's discriminatory and retaliatory actions.  While Plaintiff was fortunate enough to secure a new position a year after her termination, the discriminatory practices Plaintiff endured at Tivity Health Services have caused a lasting professional and emotional harm, which warrants appropriate compensations. In **Pollard v. E.I. du Pont de Nemours & Co.**, *532 U.S. 843, 847 (2001)*, the Supreme Court clarified that compensatory damages, including lost wages, may be awarded for both past and future harm, provided that the harm is substantiated by evidence.  In this case, while Plaintiff is no longer employed due to disability, the discriminatory practices endured have caused lasting harm to Plaintiff's well-being,

including emotional distress and a diminished quality of life, which continues to affect Plaintiff's ability to manage daily activities and live without significant hardship. Although Plaintiff is no longer employed and is now disabled, she continues to experience significant consequences from the unlawful actions of her former employer. Specifically, the discriminatory patterns Plaintiff has uncovered through her witness testimony and supporting evidence which reveal a systemic issue that impacted Plaintiff's well-being and overall quality of life. As Plaintiff's demand letter outlines, she seeks a reasonable recovery due to these ongoing and pervasive issues, which include:

1. **Back Pay:** Plaintiff request compensation for the wages she lost during the period of unlawful termination, calculated at $38,000 per year for four years, amounting to $152,000.

2. **Compensatory Damages:** Given the emotional distress and professional harm caused by the unlawful termination and discriminatory treatment, Plaintiff seeks $50,000 in compensatory damages.

3. **Punitive Damages:** Plaintiff requesting $20,000 in punitive damages to address the severity and willfulness of Tivity Health Service's actions, as they were clearly motivated by discriminatory and retaliatory intent.

4. **Attorney's Fees and Legal Costs:** Plaintiff seeks reimbursement for estimated legal fees and associated costs incurred as a result of pursuing this case in Federal Court, totaling $5,000.

In light of the significant impact this case has had on Plaintiff's life and career, Plaintiff respectfully request that the Court consider the full scope of damages and the extensive evidence provided, including the newly discovered statistical evidence and witness testimony that further supports Plaintiff's claims. Plaintiff has outlined the damages in her demand letter, which she believes are in line with both Federal and Arizona State Law, and Plaintiff is seeking a fair and just compensation for the harm she has experienced.

**CONCLUSION**

For the reasons set forth in this objection, Plaintiff respectfully request that the District Court reject the Magistrate Judge's Report and Recommendations in its entirety, particularly with respect to the enforceability of the settlement agreement without a binding signature. Plaintiff further requests that the Court allow for an opportunity to contest the settlement agreement in light of the issues raised in this objection, including the newly discovered evidence, the fairness of the settlement terms, and the lack of adequate legal representation during the settlement negotiations.

Plaintiff also respectfully urges the Court to conduct a comprehensive review of the newly discovered evidence and its potential impact on the case, as this evidence may significantly alter the terms of the settlement and the trajectory of the litigation. Additionally, Plaintiff seeks a more just resolution and equitable resolution, taking into account the patterns of discrimination and retaliation uncovered through witness testimony and evidence. Given the severity of the violations and the potential relief Plaintiff is entitled to under the law, a fair and just settlement should appropriately reflect the full extent of the damages sustained.

Plaintiff further requests any other relief the Court deems just and proper.

Respectfully submitted this 15th day of January, 2025

By      Nancy Arnaoudoff

1175 W. Pecos Road #1123

Chandler, AZ. 85224

(818) 585-5288

Nancyarnaoudoff2023@gmail.com

Pro Se

I, Nancy Arnaoudoff, declare as follows. I am over the age of 18 years old and

My Address is:                1175 W. Pecos Road #1123

Chandler, AZ. 85224

On January 14th, 2025, I served the foregoing document described below as:

**OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND**

**RECOMMENDATIONS**

On all interested parties in this action by placing a true and correct copy thereof in a

sealed envelope, with first-class postage prepaid thereon, and deposited said envelope in

the United States mail in Chandler, Arizona.

addressed to:

Jacob R. Valdez (FISHER & PHILLIPS LLP)

3200 N. Central Avenue, Suite#1550

Phoenix, AZ. 85012-2487

Daniel Crowell & Stephen C. Stovall (BARTON LLP)

611 Commerce Street, Suite#2603

Nashville, Tennessee 37203

I declare under penalty of perjury that the foregoing is true and correct. Executed on January

14h, 2025 - at Chandler Post Office in Arizona.

_N. _____ (signature)

Nancy Arnaoudoff