**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nancy Arnaoudoff,<br><br>                Plaintiff,<br><br>v.<br><br>Tivity Health Incorporated, et al.,<br><br>                Defendants. | No. CV-23-01510-PHX-DJH<br><br>**ORDER** |

Pending before the Court is Defendants' Tivity Health Incorporated and Tivity Health LLC's ("Defendants") Motion to Enforce Settlement Agreement ("Motion to Enforce") (Doc. 39) and *pro se* Plaintiff Nancy Arnaoudoff's ("Plaintiff") related Motions. (Docs. 34, 40, 55, 58, 59).[1] The Court referred these Motions to Magistrate Judge Camille D. Bibles for further proceedings and the preparation of a Report and Recommendation ("R&R"). (Doc. 60). In her December 31, 2024, R&R, Judge Bibles recommends that Defendants' Motion be granted, and Plaintiff's other pending motions be denied as moot. (Doc. 62). Petitioner subsequently filed an Objection to the R&R (Doc. 63)[2] and Defendants filed a Reply (Doc. 64).[3] Before the Court could rule on the

---

[1] These motions are Plaintiff's Motion to Subpoena to Produce Documents (Doc. 34); Motion to Assist Plaintiff with Negotiations, Vacate Stipulated Settlement Agreement, and or Assist Plaintiff to Conduct Depositions (Doc. 40); Motion for Summary Judgment (Doc. 55); Motion for Court Assistance in Subpoenaing Evidence and Authentication Due to Financial Hardship (Doc. 58); Revised Motion for Summary Judgment (Doc. 59).

[2] Plaintiff was required to file an Objection to the R&R within 14 days. *See* Fed. R. Civ. P. 6(a), 6(b), and 72. Judge Bibles's R&R was filed on December 31, 2024, and Plaintiff's Objection to the R&R was filed on January 15, 2025. The Court will excuse the one-day tardiness of Plaintiff's Objection and consider it timely filed.

pending Motions, Plaintiff filed a Motion to Amend/Correct Objection to Report and Recommendation (Doc. 66). That Motion is now fully briefed and will be denied. Having deliberated on the R&R, Plaintiff's Objections, and Defendants' Reply, the Court overrules Plaintiff's objections and adopts Judge Bibles's R&R in its entirety.

**I.     Background**

Plaintiff was employed by Defendants as a Customer Service Representative in the Physical Medicine Department. (Doc. 32 at 6). She alleges she was wrongfully terminated in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, on November 18, 2020. (*Id.* at 5). She says she needed time to recover from her surgeries, get additional surgeries—a process slowed by the Covid-19 pandemic—and instead of accommodating her request, Defendants terminated her employment. (*Id.* at 6). After receiving her Right to Sue letter from the Equal Employment Opportunity Commission on May 3, 2023, Plaintiff filed her federal lawsuit against Defendants on July 31, 2023. (*Id.* at 7). Her First Amended Complaint asks for "a minimum of $50,000 or more to be proven at trial." (*Id.*)

On August 23, 2024, Defendants filed a Motion to Enforce Settlement Agreement against Plaintiff. (Doc. 39). Therein, Defendants alleged that the parties had reached a settlement agreement via email and private negotiations. (*Id.* at 2). Specifically, Defendants represent that on August 3, 2024, Defendants sent a draft settlement agreement to Plaintiff with terms such as dismissal of the lawsuit and release for all claims, and a settlement amount of $50,000. (*Id.*) Plaintiff objected to the settlement amount, demanded an increased amount of $57,671.80, and insisted that the confidentiality clause and liquidation damages provision be removed. (*Id.*) She sent an email to that effect on August 8, 2024, demanding such changes "[b]efore Friday 8/9/2024 5pm AZ time." (*Id.* at 2–3). Defendants characterize this August 8 email as a

---

[3] Defendants' Motion for Extension of Time to File Response/Reply (Doc. 65) one day past the deadline shall be granted *nunc pro tunc*.

counteroffer to its original offer. (*Id.* at 3). On August 9, Defendants sent Plaintiff a revised settlement agreement with the confidentiality clause and liquidated damages clause deleted and an increased settlement amount of $57,671.80. (*Id.*) Defendants asked Plaintiff to return and sign the settlement agreement by August 10, 2024. (*Id.*) Plaintiff refused. (*Id.* at 3–4). When pressed about the reason, she again demanded an increased amount of money, this time, $237,000.00. (*Id.*)[4]

In their Motion to Enforce, Defendants argue that the parties had a binding contract even though Plaintiff refused to sign it. (*Id.* at 5). For the reasons discussed below, the Court agrees with Defendants and the R&R that the settlement agreement is a binding contract between the parties.

## II. Standard of Review

This Court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which" a party objects. 28 U.S.C. § 636(b)(1)(C); *see also* Fed.R.Civ.P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (same). This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b)(3).

## III. Discussion

Judge Bibles recommends the Court grant Defendants' Motion to Enforce Settlement Agreement. In her R&R she finds that neither unrepresented status nor lack of signature impacted the validity of the settlement agreement. She points out that fairness is not a required element of a binding settlement agreement and that Plaintiff's "me-too" evidence would have been deemed inadmissible and not considered. Finally, the R&R notes that the settlement amount given to Plaintiff more than adequately

---

[4] Plaintiff asked for an increased amount of $237,000.00 from Defendants. In her Objection, Plaintiff specified that this amount constituted $152,000.00 for four years' worth of backpay; $50,000.00 in compensatory damages; $20,000.00 in punitive damages; and $5,000.00 in attorney fees and legal costs. (Doc. 63 at 30). However, this breakdown totals $227,000.00, not the $237,000.00 Plaintiff demanded from Defendants. The Court notes the $10,000.00 discrepancy for the sake of accuracy.

compensates her for the one year she was out of work. For the reasons set out below, the Court agrees with Judge Bibles' R&R in its entirety.

### A. Plaintiff's Motion to Correct the Record (Doc. 66)

At the outset, the Court notes that Plaintiff has repeatedly injected false case citations into her objections. Because of the potential prejudicial effect to the Defendant and the time it took the Court to find her cited cases, the Court could strike the entirety of Plaintiff's objections. *See* Fed.R.Civ.P 11 ("[by presenting to the court a pleading, written motion, or other paper . . . an attorney or **unrepresented party** certifies . . . (1) it is not being presented for any improper purpose, (2) the claims, defenses, and other legal contentions are warranted by existing law [.]") (emphasis added). *Pro se* plaintiffs are not exempt from their obligation of candor to the court, including in their written pleadings. The Court, however, notes that Plaintiff acknowledges her "mistakes" and erroneous reliance on "external free tools at the library, such as ChatGPT" in her Motion to Correct the Record (Doc. 66), which she filed after Defendants brought the issue to the Court's attention in their Reply (Doc. 64). In its discretion, the Court will ignore the Plaintiff's fake cases, rather than striking her objections entirely. In that regard, Plaintiff's Motion to Correct the Record (Doc. 66) is granted. The Court denies Plaintiff's request to supplement her Objection with "accurate" authorities, however. As requested by Plaintiff, the Court will "consider only the **valid portions** of [the] **previous objections** and disregard any citations that are not supported by verifiable case law." (Doc. 66 at 2). [5]

### B. Plaintiff's Objections to the R&R

Plaintiff first objects to the R&R's conclusion that the settlement agreement is enforceable in light of her lack of legal counsel during those negotiations. She says the absence of counsel made her vulnerable and she was not able to make a "fully informed,

---

[5] Notably, Local Rule 7.2(e)(3) states: "Unless otherwise permitted by the Court, an objection to the Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages." LRCiv. 7.2(e)(3). Plaintiff did not seek leave to exceed the 10-page limit before filing her 33-page Objection, the vast majority of which cites to nonexistent case law or case law that is otherwise inapplicable.

1 voluntary decision." (*Id.* at 3). Her position is largely supported by nonexistent case law[6] that purports to say that without legal representation, she could not have voluntarily agreed to a settlement agreement. (*Id.* at 3–6). Her argument is not well-founded in fact or law. Judge Bibles properly addressed this argument and concluded that Plaintiff herself chose to proceed *pro se*. (Doc. 62 at 9). Having made that choice, Plaintiff is not entitled to special treatment or a different interpretation of the law. (Doc. 62 at 9). *See Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986) (stating that *pro se* litigants in a civil dispute "should not be treated more favorably than parties with attorneys of record"). Judge Bibles also noted that even without legal counsel, Plaintiff was able to negotiate more favorable terms in the negotiations, such as the omission of the confidentiality clause and the liquidation damages clause. (Doc. 62 at 10). She also negotiated a higher settlement amount, specifically so she could account for having to pay taxes on the settlement award. (*Id.*) In this regard, Plaintiff's objection as to the agreement's enforceability due to her lack of representation is overruled.

Next, Plaintiff objects to the R&R's conclusion that the agreement is enforceable because it was never finalized. (Doc. 63 at 2). As she did in her Response to the Motion to Enforce, she points to the fact that it was negotiated over email and was never signed. (*Id.*); (Doc. 43 at 3). The Court is not persuaded. Plaintiff argues that because the settlement agreement had no signature, she is not bound by its terms and cites to Local Rule 83.7. (*Id.*)

Local Rule 83.7 governs stipulations between counsel and states: "No agreement between parties or attorneys is binding, if disputed, unless it is in writing signed by the attorney of record or by the unrepresented party or made orally in open court and on the record; provided, however that in the interests of justice the Court shall have the discretion to reject any such agreement." LRCiv 83.7. The rule's signature requirement

---

[6] The only existing case Plaintiff cites in support of her argument is *Alcaide v. Thomas*, No. CV-11-01162-JAT-JFM, 2015 WL 6087560, at *1 (D. Ariz. Oct. 16, 2015). That case, however, concluded that the parties had mutually assented to all terms of the settlement agreement and were in fact bound by it, and accordingly does not provide a factual analogy that supports Plaintiff's position.

- 5 -

is meant to protect the authenticity of documents that come before the Court. *See Nesbitt v. City of Bullhead City*, No. CV-18-08354-PCT-DJH, 2020 WL 6262396, at *4 (D. Ariz. Oct. 23, 2020) (explaining that the rule's primary function is to attest to the authenticity of a document); *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983) ("District courts have broad discretion in interpreting and applying their local rules.") (quoting *Lance, Inc. v. Dewco Services, Inc.*, 422 F.2d 778, 783–84 (9th Cir.1970)). The authenticity of the emails sent between Plaintiff and Defendant was never in dispute. Plaintiff's reliance on this rule is, therefore, misplaced.

Even assuming the applicability of Local Rule 83.7, the emails Plaintiff sent with her signature line at the bottom, constitute a valid and proper signature based on this Court's interpretation of Local Rule 83.7. *See Miranda*, 710 F.2d at 521 (allowing the court to interpret local rules); *see Nesbitt*, 2020 WL 6262396, at *4 (finding that an email signature constitutes a signature). The Court concludes that Local Rule 83.7 does not call into question the validity of this settlement agreement.

Further, it is well-settled law that to enforce a settlement agreement, a signature is not required. *Est. of Studnek by & Through Studnek v. Ambassador of Glob. Missions UN Ltd. His Successors*, No. CIV-04-0595-PHX-MHM, 2007 WL 9724107, at *5 (D. Ariz. Apr. 11, 2007) (stating that an agreement does not need to be reduced to writing or signed for it to be binding). What is required, is the parties' understanding and agreement regarding the terms of the settlement agreement. *Id*. The Court agrees with the R&R that Plaintiff understood the terms of the agreement, and in fact negotiated with Defendants for certain terms, and therefore, agreed to be bound by those terms. Based on state contract law principles that govern settlement agreements, Plaintiff negotiated with her former employer, made a counteroffer to Defendant's offer, and then agreed on a settlement price and terms. (Doc. 39 at 2–3; Doc. 62 at 2–5); *see Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014) (finding that state contract law governs a settlement agreement); *see also Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) (holding that a motion to enforce a settlement agreement is "an action to specifically

enforce a contract").

While the parties had been engaging in negotiations with each other prior to August 2024, the Court agrees with the R&R that the August 8, 2024, the draft settlement agreement that was sent to Plaintiff via email functioned as an offer. (Doc. 39 at 2; Doc. 62 at 3); *see Rogus v. Lords*, 804 P.2d 133, 135 (Ariz. Ct. App. 1991) (stating that a valid contract requires an offer, an acceptance, consideration, and adequate specifications of the terms). Plaintiff, in turn, rejected that offer, and clearly posited a counteroffer to Defendants in her responsive email, which stated:

> With that being said, I am willing to settle this case and accept the $57,671.80 Settlement Agreement with Tivity, but I would need a Settlement Agreement to Sign with the Confidentiality Clause/Liquidated Damage Omitted before Friday 8/9/2024 5pm AZ time.

(Doc. 39-1 at 9).

Plaintiff's email, with the specific amount upon which she would be "willing to settle this case" and the additional terms that the confidentiality and liquidation clauses be removed, served as a valid counteroffer. (Doc. 39 at 2; Doc. 62 at 3); *see United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 423 (Ariz. Ct. App. 1983) (stating that changing the terms of the offer, converts the offer to a counteroffer, which can still be accepted by the party that made the original offer and form the basis of a valid contract). When Defendants accepted the counteroffer, that constituted acceptance. (Doc. 62 at 8). There was also adequate consideration because Plaintiff had agreed to be paid a certain sum—$57,671.80— in exchange for the removal of certain terms in the agreement and to have the litigation settled. (Doc. 62 at 8). Found within these emails are the typical hallmarks of a valid contract and therefore, a valid settlement agreement that binds both Plaintiff and Defendants. The Court agrees with the R&R on this point and Plaintiff's objections otherwise are overruled.

Plaintiff also criticizes the fairness of the agreement. (Doc. 63 at 6). To support this, she points to her objections to the confidentiality and liquidation clauses in the agreement. (*Id.*) She again points to her lack of legal representation as to why she was

not on firm footing to negotiate an agreement with Defendants. (*Id.*)

The R&R properly notes that this is not a Fair Labor Standards Act case, and thus fairness is not a factor that needs to be analyzed to find that a private settlement agreement is binding. (Doc. 62 at 10). What is required for a settlement agreement to be binding is: an offer, acceptance, consideration, and specification of terms. *Rogus*, 804 P.2d at 134. Again, all these factors are present in the settlement agreement. (Doc. 39-1).[7] And although Plaintiff cites her objections to the confidentiality and liquidation clauses as evidence of the agreement's unfairness, she successfully negotiated the removal of those clauses. This undercuts her argument that the agreement was unfair. Having found no unfairness, although not required, this Court does not find any weight in Plaintiff's objection to the unfairness of the agreement.

Plaintiff next argues that Judge Bibles erroneously disregarded the fact that she has a witness that can testified to Defendants' discriminatory practices. (Doc. 63 at 11). She says this "newly discovered evidence" should be considered before enforcing the agreement because it could result in a higher settlement amount. (*Id.*) Plaintiff made the same argument in her Response and Judge Bibles properly disposed of it by explaining that such evidence had questionable relevancy and admissibility: "[T]he issue in this matter is Defendants' treatment of Plaintiff; the statements of another individual with regard to their own experience as Defendants' employee prior to Plaintiffs' experience would not necessarily be relevant or admissible to determine whether Defendants violated Plaintiff's rights pursuant to the ADA." (Doc. 62 at 11). In ADA claims, this type of "me-too" evidence only becomes relevant if it is related to the plaintiff's own circumstances and theory of the case. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 380 (2008) (holding that the relevance of "me-too" evidence depends on a variety of factors including a close relationship between the "me-too" evidence and plaintiff's own circumstances). To properly plead that "me-too" evidence is relevant and should be considered, the Plaintiff must adequately allege similarities between her

---

[7] This document is the finalized settlement agreement, attached as Exhibit 1 to Defendants' Motion to Enforce Settlement Agreement. (Doc. 39).

1  situation and the other witness she seeks to have accounted for. *See Moore v. Donahoe*,
2  460 F. App'x 661, 663 (9th Cir. 2011) (excluding "me-too" evidence because the other
3  employees were not similarly situated). Plaintiff has pointed to nothing to show that the
4  witness she references is similarly situated or other factors that would show a close
5  relationship between what happened to the witness and what happened to Plaintiff.
6  Having shown no error with the R&R's treatment of this issue, Plaintiff's objection is
7  overruled.

8  Finally, Plaintiff objects to the enforceability of the agreement because the
9  settlement amount does not fully compensate her. (Doc. 63 at 29). Specifically, Plaintiff
10 states that she suffered "lasting professional and emotion harm" because of Defendants'
11 conduct. (Doc. 63 at 29). According to Plaintiff, this means she should be entitled to
12 four years' worth of her salary, compensatory damages, punitive damages, and attorney
13 fees and legal costs.[8] (Doc. 63 at 30). She says all of this would amount to $227,000.00.
14 (*Id.*)

15 Normally, in an ADA suit for retaliation, a plaintiff is not entitled to compensatory
16 or punitive damages. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (stating that
17 compensatory and punitive damages are not available for claims brought for retaliation
18 under the ADA). Rather, Plaintiff is only entitled to equitable remedies such as backpay
19 or reinstatement.[9] *See Alvarado v. Cajun Operating Co.*, No. CV 04-631-TUC-CKJ, 2007
20 WL 9724722, at *1 (D. Ariz. Dec. 11, 2007), *aff'd*, 588 F.3d 1261 (9th Cir. 2009) (stating
21 that plaintiff should pursue the equitable remedies available under the ADA). Here,
22 Plaintiff was entitled to backpay from the time she was terminated until she was able to
23 find employment with another employer. (Doc. 62 at 11). Plaintiff negotiated a

---

[8] The Plaintiff proceeded *pro se* and *in forma pauperis*. (Doc. 5). Plaintiff does not explain where she has incurred attorneys' fees or legal costs in this matter.

[9] While the Ninth Circuit has never directly addressed the issue of whether compensatory and punitive damages are available, the Seventh Circuit addressed the question and answered in the negative. *Kramer v. Banc of America Securities, LLC*, 355 F.3d 961 (7th Cir. 2004) (holding that compensatory and punitive damages are not statutorily available remedies under the ADA). An employee asserting a retaliation claim can only bring equitable remedies, such as back pay or reinstatement. *Id.*

settlement amount that was far greater than the one year she was out of work. (*Id.*) Accounting only for the one year, Plaintiff would be entitled to $37,440.00 (the amount of her yearly salary), plus benefits in the amount of $12,560.00. (Doc. 1 at 12). This would bring her total to $50,000.00. The amount Plaintiff was able to negotiate was $57,671.80. (Doc. 62 at 3). This achieves the equitable remedies set out in the ADA for retaliation claims such as Plaintiff's. Though not obligated to make such a finding in assessing enforceability, the Court finds that Plaintiff will be adequately compensated under the settlement agreement for the one year that she was out of work due to Defendants' termination of her employment.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation (Doc. 62) is fully adopted and Defendants' Motion to Enforce Settlement Agreement (Doc. 39) is **granted.**

**IT IS FURTHER ORDERED** that the following Motions by Plaintiff are **denied** as moot: Motion to Subpoena (Doc. 34); Motion to Assist Plaintiff with Negotiations (Doc. 40); Motion for Summary Judgment (Doc. 55); Motion for Court Assistance in Subpoenaing Evidence (Doc. 58); and Supplemental/Revised Motion for Summary Judgment (Doc. 59).

**IT IS FURTHER ORDERED** that Defendants' Motion for Extension of Time to File Response (Doc. 65) is **granted** and Plaintiff's Motion to Amend/Correct Objection to Report and Recommendation (Doc. 66) is **granted in part and denied in part**, as stated herein.

**IT IS FINALLY ORDERED** directing the Clerk of Court to dismiss this matter, with prejudice.

Dated this 11th day of March, 2025.

Honorable Diane J. Humetewa
United States District Judge